UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| MARK HANBY MINISTRIES, INC., *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 1:06-CV-114 |
| v. ) | |
| ) | *Lee* |
| ) | |
| JENIVIEVE LUBET, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM and ORDER**

**I.   Introduction**

Before the Court is the Defendant's motion to dismiss the Plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction [Doc. No. 2]. The Court has considered Defendant's brief [Doc. No. 3] and affidavit [Doc. No. 4] in support of her motion to dismiss, Plaintiffs' response in opposition to Defendant's motion to dismiss [Doc. No. 12] and affidavit [Doc. No. 13], and Defendant's reply [Doc. No. 14]. For the reasons that follow, Defendant's motion to dismiss the Plaintiffs' complaint for lack of personal jurisdiction under Rule 12(b)(2) [Doc. No. 2] is **DENIED**.

**II.   Background**

    **A.   The Verified Complaint**

Plaintiffs, Mark Hanby Ministries, Inc. ("MHMI"), Beyth Shan Foundational Ministries, Inc. ("BSFMI"), and Mark D. Hanby ("Hanby") (collectively "Plaintiffs"), commenced this action on April 11, 2006 in the Hamilton County (Tennessee) Circuit Court[1] against Defendant Jenivieve Lubet

---

[1] On May 12, 2006, Defendant removed this action from state court to federal court pursuant to 28 U.S.C. § 1441 and 1146, based upon the diversity of citizenship of the parties.

("Defendant") [Doc. No. 1-2 at 3]. Plaintiffs assert that Defendant is the step-daughter of Hanby, as the result of the marriage between Hanby and Defendant's mother, Linda Hanby [*id.* at 4-5]. As of April 11, 2006, an action for divorce between the Hanbys was pending in the Bledsoe County (Tennessee) Circuit Court [*id.* at 5-6]. In summary, Plaintiffs assert that beginning on February 17, 2006, Defendant "intentionally has published defamatory, misleading, malicious and untrue publications, communications and activities by email communications" to individual employees of Plaintiffs' ministries as well as supporters of Plaintiffs both within and without the State of Tennessee [*id.* at 6]. Plaintiffs also assert Defendant published the aforementioned communications globally through the use of the internet [*id.*].

Plaintiffs' complaint is verified by Hanby [*id.* at 19]. Plaintiffs have asserted claims under the law of the State of Tennessee against Defendant for: (1) interference with the contractual business relations of MHMI and BSFMI [Count I]; (2) defamation of MHMI and BSFMI [Count II]; (3) shame, contempt, ridicule and embarrassment of Hanby [Count III]; (4) defamation against Hanby [Count IV]; (5) intentional infliction of emotional distress against Hanby [Count V]; (6) invasion of the privacy of Hanby [Count VI]; (7) false light invasion of the privacy of Hanby [Count VII]; (8) violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, *et seq.*, [Count VIII]; and (9) a claim for a restraining order against Defendant under Tenn. R. Civ. P. 65.03 [Count IX] [*id.* at 8-13]. Plaintiffs seek a permanent injunction against Defendant; compensatory damages and exemplary damages in the amount of $100,000 per publication or $1,500,000, whichever is greater; attorney's fees and costs [*id.* at 13-15]. Attached to Plaintiffs' complaint are an *ex parte* temporary restraining order against Defendant issued by the Hamilton County Circuit Court on April 11, 2006 [Doc. No. 1-2 at 20-22] and several e-mails allegedly sent by Defendant [Doc. Nos. 1-4, 1-5, 1-6, 1-7 and 1-8].

2

### B. Defendant's Affidavit

In her affidavit, Defendant states she is a resident of the State of North Carolina, has had no physical contact with the State of Tennessee, has not traveled to Tennessee, has not directed mail to any resident of the State of Tennessee and has not had face-to-face contact with any Plaintiff or the agent for any Plaintiff during the period beginning February 16, 2006 [Doc. No. 4 at 1, ¶ 4]. Defendant's affidavit also states:

> 5. I had one telephone call in which I left a message to Justin Redden, an employee of Mark Hanby Ministries, Inc. based in Chattanooga, TN, requesting information about what was happening with the litigation involving my mother, Linda Hanby. Mark Hanby, Jr., a resident of the State of Arizona, returned my call.
>
> 6. I sent emails to Justin Redden's email address. In these emails I discussed what Mark Hanby has done and continues to do to my mother, Mark Hanby's inappropriate actions with other women, and Mark Hanby's misrepresentation of himself to his staff and other ministers associated with Mark Hanby Minstries.
>
> 7. I also posted comments on a political blog, as well as a religious internet message board which to the best of my knowledge, information, and belief, are not based in or run by any individual in the State of Tennessee.
>
> 8. The blog upon which I posted was regarding a mentor of Mark Hanby. I merely posted facts about Mr. Hanby, and other individuals added on to the blog regarding Mr. Hanby. I did post several responses to posts.
>
> 9. Finally, I sent group emails to parishioners of Mr. Hanby, in response to a group email Mr. Hanby originally sent out, but I am not aware that any of them were located in the State of Tennessee.

[*Id.* at 2].

### C. Allison's Affidavit

Attached to Plaintiffs' response in opposition to Defendant's motion to dismiss is the affidavit of Dale A. Allison, Jr. ("Allison"), a member of the Board of Directors of MHMI and BSFMI, which are located in Chattanooga, Hamilton County, Tennessee [Doc. No. 13 at 1, ¶¶ 4,6]. Allison's affidavit states that Defendant is a former employee of MHMI and worked for MHMI until 2004, when she moved to North Carolina [*id.* at 2, ¶ 7]. Allison's affidavit further states in pertinent part:

> 9. During her period of employment with Mark Hanby Ministries, Inc. Jenivieve Lubet had access to sensitive and confidential materials of her employer. The contents of these materials would include names and addresses of ministry supporters.
>
> 10. During 2006, Mark Hanby Ministries, Inc. and Beyth Shan Foundational Ministries, Inc., as well as her stepfather, Dr. Mark D. Hanby, were the subject of a series of devastating communications from Jenivieve Lubet which were directed to ministry supporters.
>
> 11. Many ministry supporters are residents of the State of Tennessee and received Ms. Lubet's defamatory communications, including the following persons: Kimball Knight (Brentwood, Tennessee), J. Z. Valentine (Chattanooga, Tennessee), Charlie and Wanda Rawlins (Dunlap, Tennessee), and Dickie Porter (Chattanooga, Tennessee).
>
> 12. As a result of Jenivieve Lubet's activities, the ministries lost many long-time supporters resulting in economic damage to the ministries.
>
> 13. As a specific example, Charlie and Wanda Rawlins of Dunlap, Tennessee, terminated their . . . financial support of the ministries following their receipt of defamatory communications from Jenivieve Lubet.

[*Id.* at 2].

### III. Analysis

#### A. The Parties' Positions

Defendant asserts her contacts with the State of Tennessee are insufficient to permit this Court to exercise personal jurisdiction over her under the Tennessee long-arm statute, Tenn. Code Ann. § 20-2-214 [Doc. No. 3 at 1-2]. Defendant states she is a North Carolina resident, who had no physical contact with Tennessee. Defendant further states her only contact with the State of Tennessee related to Plaintiffs' claims consisted of e-mails and a single telephone call to an employee of the Plaintiffs [*id.* at 2]. Finally, Defendant asserts her actions of sending e-mails to non-residents of Tennessee, and posting information on a web log, political blog and religious internet message board located outside of Tennessee are not sufficient for the exercise of *in personam* jurisdiction over her [*id.* at 2-4].

In their verified complaint, Plaintiffs assert Defendant:

> intentionally has published defamatory, misleading, malicious, and untrue publications, communications, and activities both by email communication *to individual persons such as ministry employees located within Tennessee as well as to supporters of Plaintiffs both within and without the State of Tennessee.*

[Doc. No. 1-2 at 6] (emphasis added).

In their response in opposition to Defendant's motion to dismiss, Plaintiffs assert this Court has *in personam* jurisdiction over Defendant based upon her allegedly defamatory communications to supporters of, or donors to, Plaintiffs' ministries in Tennessee who terminated their relationship/support of the aforesaid ministries based upon Defendant's communications [Doc. No. 12 at 10]. Plaintiffs assert Defendant is subject to the personal jurisdiction of this Court because:

> Defendant Lubet intentionally contacted supporters and donors of Plaintiffs. Many of these ministry supporters are residents of the State of Tennessee and received Defendant Lubet's communications within the State of Tennessee. The false, outrageous, and defamatory communications made by Defendant Lubet constitute "the heart" of the

5

> Plaintiffs' tort claims against Defendant Lubet. Moreover, this tortious activity by Defendant Lubet proximately caused reputational and economic damage to Plaintiffs, all of which was suffered by Plaintiffs who are residents/domiciliaries of the State of Tennessee.

[*Id.*].

In her reply, Defendant asserts Plaintiffs have not made a *prima facie* showing she is subject to personal jurisdiction in the State of Tennessee [Doc. No. 14 at 1]. Defendant further asserts the Allison affidavit does not comply with the Federal Rules of Evidence and should be disregarded [*id.* at 2]. Finally, Defendant asserts Plaintiffs have offered no evidence that her communications were purposefully directed at Tennessee, stating:

> The plaintiffs have not presented an affidavit of even one person who received these alleged communications, nor have they presented any physical evidence, such as copies of e-mails or telephone records, that shows that these communications even took place.

[Doc. No. 14 at 3].

### B. Plaintiffs' Burden of Proof

"In determining whether a defendant is subject to personal jurisdiction, the stage of the litigation affects the standard, but not the burden of proof." *S & S Screw Mach. Co. v. Cosa Corp.*, 647 F. Supp. 600, 605 (M.D. Tenn. 1986). The plaintiff bears the burden of persuasion on the issue of personal jurisdiction throughout the litigation. *Id.* (quoting *Welsh v. Gibbs*, 631 F.2d 436, 438 (6th Cir. 1980), *cert. denied*, 450 U.S. 981 (1981)).

When considering a challenge to jurisdiction, there is no statutory procedure, the mode of determination is left to the trial court, which may receive and weigh affidavits. *Welsh*, 631 F.2d at 438 (citing 5 Wright and Miller, *Federal Practice and Procedure* § 1351, at 565 (1969)). If the court decides the issue solely on the basis of written materials, the plaintiff need only make a *prima facie* case of jurisdiction; namely, a plaintiff must "demonstrate facts which support a finding of jurisdiction in

6

order to avoid a motion to dismiss." *Id.* (citing *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.,* 557 F.2d 1280, 1285 (9th Cir. 1977)). A *prima facie* case of jurisdiction is met by showing jurisdiction is conferred by the state's long arm statute. *Id.* In this situation, the plaintiff's burden "is relatively slight and the district court 'must consider the pleadings and affidavits in the light most favorable to the plaintiff.'" *Id.* at 439 (quoting *Poston v. American President Lines, Ltd.*, 452 F. Supp. 568, 571 (S.D. Fla. 1978)). If a court concludes the written submissions of the parties have raised issues of credibility or disputed issues of fact requiring resolution, the court may conduct a preliminary evidentiary hearing. *Id.* at 439. If the court holds a preliminary evidentiary hearing, the plaintiff must establish the existence of jurisdiction by a preponderance of the evidence. *Id.* (citing *Data Disc*, 557 F.2d at 1285).

No party has requested an evidentiary hearing on the issue of personal jurisdiction or indicated a need for discovery on the issue of jurisdiction. Under these circumstances, the Plaintiffs need only make a *prima facie* showing of jurisdiction, and the Court will construe the facts in the light most favorable to the Plaintiffs. Ultimately, however, Plaintiffs bear the burden of demonstrating the existence of jurisdiction as noted above.

### C. Tennessee's Long-Arm Statute

In an action based on diversity, such as the instant action, "a federal court determines whether personal jurisdiction exists over a nonresident defendant by applying the law of the state in which it sits." *Third Nat'l Bank in Nashville v. WEDGE Group Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989), *cert. denied*, 493 U.S. 1058 (1990)). The Tennessee long-arm statute, Tenn. Code Ann. § 20-2-214, provides for personal jurisdiction over nonresidents on "[a]ny basis not inconsistent with the constitution of this state or the United States." *Id.* (quoting Tenn. Code Ann. § 20-2-214)). Pursuant to the state's long-arm statute, "Tennessee courts exercise personal jurisdiction 'to the full limit allowed by due process.'" *Id.* (quoting *Masada Inv. Corp. v. Allen*, 697 S.W.2d 332, 334 (Tenn. 1985)).

7

In order to subject a defendant who is not present within a state or territory to a judgment *in personam*, due process requires the defendant "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The critical question for the minimum contacts analysis "is whether 'the defendant's conduct and connection with the forum state are such that [s]he should reasonably anticipate being haled into court there.'" *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Under the Due Process Clause, a forum may exercise personal jurisdiction over a nonresident who has "purposefully directed" activities toward residents of the forum since "[a] State generally ha[s] a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985)).

Personal jurisdiction is either specific or general. *First Tennessee Nat. Corp. v. Horizon Nat'l Bank*, 225 F. Supp. 2d 816, 820 (W.D. Tenn. 2002) (citing *Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 981 (6th Cir. 1992)). The difference between specific and general personal jurisdiction is:

> General jurisdiction exists when "a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Third Nat'l Bank v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989). Specific jurisdiction arises only when the plaintiff establishes that 1) the defendant purposefully availed himself of the privilege of acting in the forum state or causing a consequence in the forum state, 2) the cause of action arose from the defendant's activities in the forum state, and 3) the acts of the defendant or consequences caused by the defendant have a substantial enough connection with the forum state to make the exercise of jurisdiction reasonable. *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

*First Tennessee*, 225 F. Supp. 2d at 820.

### D. Plaintiffs' Have Made a *Prima Facie* Showing of Jurisdiction

If *in personam* jurisdiction exists over Defendant in this action it will be specific personal jurisdiction as there is no allegation Defendant has continuous and systematic contacts with the State of Tennessee. Pursuant to the Tennessee long-arm statute, a Tennessee court can "exercise jurisdiction 'if a tortious act is committed outside the state and the resulting injury is sustained within the state, the tortious act and the injury are inseparable, and jurisdiction lies in Tennessee.'" *Neal v. Janssen*, 270 F.3d 328, 331 (6th Cir. 2001) (quoting Tenn. Code Ann. § 20-2-214(a)).

In *Neal*, the plaintiffs brought an action against defendant, a Belgian citizen, for fraud and breach of fiduciary duty stemming from the sale of a horse. *Id.* at 330. Defendant, who was assisting the plaintiffs in the sale of the horse because it was being boarded in the Netherlands, was to receive a commission on the sale. *Id.* Defendant made phone calls and sent facsimiles to plaintiffs in Tennessee in which he discussed the sale and presented third party offers to purchase the horse. *Id.* Based upon one or two phone calls from defendant, in which he told plaintiffs they had "placed an unrealistically high value on the horse," plaintiffs agreed to sell the horse for $312,000 after defendant told them he would forego his commission on the sale. *Id.* Plaintiffs subsequently learned the buyer had actually paid defendant $480,000 to purchase the horse. *Id.* The Sixth Circuit found there was *in personam* jurisdiction over the defendant in Tennessee because his phone calls and faxes about the price were not incidental to the plaintiffs' cause and action and were directed at individuals in Tennessee holding: "even a single act by a defendant directed toward Tennessee that gives rise to a cause of action can support a finding of minimum contacts sufficient to exercise personal jurisdiction without offending due process." *Id.* at 331 (citing *Calder v. Jones*, 465 U.S. 783 (1984)).

### 1. Telephone Call and E-mails

The Sixth Circuit has held making telephone calls into a forum may be sufficient to confer *in personam* jurisdiction on a nonresident defendant where the calls form the basis for the action. *Id.* at 332. "When the actual content of a communication into a forum 'gives rise to an intentional tort action, that alone may constitute purposeful availment. It is the quality of the contacts, not the quantity, that determines whether they constitute purposeful availment.'" *Id.* (citing *LAK, Inc. v. Deer Creek Enter.*, 885 F.2d 1293, 1301 (6th Cir. 1989), *cert. denied*, 494 U.S. 1056 (1990)).

E-mails are treated somewhat differently, however. In *Rice v. Karsch*, 154 F. App'x 454, 456 (6th Cir. 2005), the plaintiffs asserted "by directing fraudulent and negligent statements toward plaintiffs...in Tennessee over the telephone and by e-mail," defendant, who was in Florida, availed himself of the laws of the State of Tennessee and was subject to personal jurisdiction in Tennessee. The district court found the defendant lacked sufficient contacts with the state to warrant the exercise of personal jurisdiction in Tennessee. *Id.* Upon review, the Sixth Circuit found defendant sent e-mails to one of the plaintiffs, Rice, who resided in Tennessee, to the e-mail address "pfrracing@yahoo.com," but held:

> There is nothing about this email address which indicates that Rice would have accessed his yahoo.com email account or otherwise read this email in Tennessee. Finding personal jurisdiction over an individual merely because he sends an email to a generic email address is incomprehensible to this court. If such reasoning were adopted by this Court [defendant] would be subject to personal jurisdiction in any location where said email address could be accessed, i.e., in *every* state regardless of whether the sender had any other contacts with that forum.

*Id.* at 462. *Cf. Internet Doorway, Inc. v. Parks*, 138 F. Supp. 2d 773, 779-80 (S.D. Miss. 2001) (where the defendant sent "an e-mail solicitation to the far reaches of the earth," it is forseeable the e-mail could be read and opened in numerous places, including the forum state).

### 2. Internet Activity

Neither party has cited to any relevant Sixth Circuit precedent concerning *in personam* jurisdiction based on internet activity; and, the Court's research has disclosed none. Thus, the Court has looked to *persuasive* precedent outside of the Sixth Circuit. Personal jurisdiction based on internet activity requires the courts to assess the nature and quality of a defendant's internet activity. *Machulsky v. Hall*, 210 F. Supp. 2d 531, 538 (D.N.J. 2002). Internet sites have been categorized according to three interactivity levels:

> (1) interactive sites used to conduct business over the Web; (2) semi-interactive sites allowing the exchange of information with a host computer; and (3) passive sites allowing access to information but not enabling the exchange of information with a host computer.

*Id.* (citing *Amberson Holdings L.L.C. v. Westside Story Newspaper*, 110 F. Supp. 2d 332, 336 (D.N.J. 2000)).

"When a defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper." *Id.* at 539 (quoting *Desktop Tech. Inc. v. Colorworks Reprod. & Design*, No. CIV. A. 98-5029, 1999 WL 98572, * 3 (E.D. Pa. Feb. 25, 1999)). However, when the defendant uses the internet to exchange information with a host computer, the court must examine the nature and level of interactivity in the exchange in order to determine the propriety of exercising personal jurisdiction. *Id.* If a defendant "merely posts information or advertisements on a Web site,...personal jurisdiction over such defendant is improper." *Id.*

Moreover, activity via the internet "must be substantially more regular and pervasive to constitute 'purposeful availment of doing business' within a given state." *Id.* (citing *Desktop Tech.*,

11

1999 WL 98572 at * 5-* 6)). With regard to internet activity alleged to constitute libel or defamation, the Third Circuit requires a plaintiff to establish the elements of the "effects" test set forth in the decision in *Calder v. Jones*, 465 U.S. 783 (1984). *Machulsky*, 210 F. Supp. 2d at 540 (citing *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998)). The elements of the *Calder* "effects" test are:

> (1) the defendant must commit an intentional tort; (2) the plaintiff must feel the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by plaintiff as a result of the tort; and, (3) the defendant must expressly aim his or her tortious conduct at the form such that the forum can be said to be the focal point of the tortious activity.

*Id.*

In order to satisfy the "effects" test, there must be proof the alleged tortious conduct was expressly aimed at the forum state. *Machulsky*, 210 F. Supp. 2d at 541. Further, tortious conduct aimed at a forum resident is different from tortious conduct aimed at the forum state, and tortious conduct aimed at a forum resident does not satisfy the "effects" test. *Id.* For instance, the *Machulsky* court noted that in applying the "effects" test, another district court had declined to exercise jurisdiction

> over a nonresident defendant for posting allegedly libelous information about a Pennsylvania plaintiff on an interactive Web site message board because the plaintiff failed to show that defendant's comments specifically targeted him in his local capacity as a Pennsylvania psychiatrist or that defendant targeted internet users in Pennsylvania.

*Id.* at 540 (citing *Barrett v. Catacombs Press*, 44 F. Supp. 2d 717, 729 (E.D. Pa. 1999)).

There must be evidence the alleged libel/defamation "actually had an effect on residents of the forum or that the alleged defamation actually targeted the forum in order for the 'express aiming' requirement to be satisfied." *Medinah Mining, Inc. v. Amunategui*, 237 F. Supp. 2d 1132, 1137-38 (D.

12

Nev. 2002). Further, the Third Circuit noted the Fourth Circuit has held personal jurisdiction will exist in the internet context over a person outside of a forum state:

> when that person (1) directs electronic activity into the State, (2) *with the manifested intent of engaging in business or other interaction within the State,* and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the [forum] State's courts.

*Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 453 (3d Cir. 2003) (quoting *ALS Scan v. Digital Service Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002)) (emphasis in original).

The "likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of [the communications] that an entity conducts over the Internet." *Medinah Mining*, 237 F. Supp. 2d at 1135 (quoting *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997)). "[M]inimal correspondence alone will not satisfy minimum contact." *Machulsky*, 210 F. Supp. 2d at 539 (quoting *Barrett*, 44 F. Supp. 2d at 729)). When a defendant has simply posted information on a passive internet web site that does nothing more than make information available to those who are interested in it, no basis exists for the exercise of personal jurisdiction. *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) (citing *Bensusan Restaurant Corp. v. King*, 937 F. Supp. 295 (S.D.N.Y. 1996)). With regard to an interactive web site, however, "the level of interactivity and...nature of the exchange of information that occurs on the web site," must be scrutinized to determine if personal jurisdiction exists. *Id.* (quoting *Maritz, Inc. v. Cybergold, Inc.*, 947 F. Supp. 1328 (E.D. Mo. 1996)).

### 3. Application

In his affidavit, Allison states "[t]he matters to which I refer in this Affidavit are made of my own personal knowledge." [Doc. No. 13 at 1]. As is set forth above, the Allison affidavit states many supporters of the Plaintiffs' ministries were residents of Tennessee and received defamatory

13

communications from Plaintiff [*id.* at 2]. Paragraphs 11 and 13 identify five individuals who were alleged to have received "communications" from Defendant; and, in paragraph 13 it is alleged two of the five individuals previously identified, terminated their support of the Plaintiffs' ministries based upon the alleged defamatory "communications" they received from Defendant [*id.*].

Defendant has challenged Allison's affidavit as hearsay under Fed. R. Evid. 801, which defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Although Allison's affidavit is couched in terms of personal knowledge, he does not allege he received any communications from Defendant and he offers no basis for his alleged personal knowledge that the five individuals identified in his affidavit received communications from Defendant or that two of those five individuals terminated their support of Plaintiffs' ministries based upon the content of the alleged defamatory communications. Because such statements are not based upon Allison's receipt of communications from Defendant, nor are they based upon actions Allison took after receiving a communication from Defendant, such statements are hearsay, sought to be admitted for the truth of the matter. Such statements do not appear to fall within any exception to the definition of hearsay under Fed. R. Evid. 801(d) or 803. Further, there is no allegation in Allison's affidavit that any of the five individuals identified would be unavailable to give their own testimony or affidavit as defined in Fed. R. Evid. 804(a) and, thus, the statements also do not fall within any of the hearsay exceptions set forth in Fed. R. Evid 804(d).

In *Green Keepers, Inc. v. Softspikes, Inc.*, No. CIV. A. 98-2255, 1998 WL 717355, * 3 (E.D. Pa. Sep. 23, 1998), the Court excluded an affidavit submitted by the plaintiff in opposition to the defendant's motion to dismiss for lack of personal jurisdiction on the grounds the critical facts within the affidavit were "information" in the affiant's possession not within his personal knowledge. In *Green Keepers*, the affidavit was excluded as hearsay, even though it stated it was based on personal

14

knowledge and information. *Id.* While Plaintiffs have not responded to, or requested an opportunity to respond to, Defendant's contention that portions of Allison's affidavit are hearsay, I conclude that, like the situation in *Green Keepers,* significant portions of his affidavit appear to be based on information made known to Allison, rather than his personal knowledge.

Even without considering the hearsay portions of the Allison affidavit, however, Defendant admits she sent e-mails to the address of Justin Redden, who was employed at MHMI in Chattanooga [Doc. No. 4 at 2, ¶¶ 5-6]. Plaintiffs have provided the Court with no evidence from Mr. Redden concerning the e-mails he was sent by Defendant, but Defendant's affidavit describes the content of her e-mails to Mr. Redden as including what Hanby allegedly has done and continues to do to her mother, Hanby's allegedly inappropriate actions with other women, and Hanby's misrepresentation of himself to his staff and other ministers associated with Plaintiffs [*id.* at ¶ 6]. Although Defendant admits she made a telephone call to Mr. Redden and sent him e-mails, her affidavit says nothing about whether or where Redden actually opened and read the e-mails, and Plaintiffs have not provided the missing information to date.

As noted, Plaintiffs attached copies of allegedly defamatory communications sent by Defendant to their complaint [Doc. Nos. 1-4 through 1-8]. Upon review of the communications, it is impossible to determine whether all of the e-mails were sent directly to an individual recipient or recipients or were more general internet postings. All of the e-mails were sent, or appear to have been sent, to the e-mail address "juniorvp@aol.com" [*id.*]. One of the e-mails contains a postscript, "p.s. Justin . . . I know about you too!" [Doc. No. 1-7]. Plaintiffs have not identified "juniorvp." Two of the exhibits appear to discuss postings on an internet blog as opposed to being directed to an individual [Doc. Nos. 1-5, 1-6].

At this point, Plaintiffs have not presented an affidavit from any individual in Tennessee who received an allegedly defamatory e-mail or other communication in Tennessee sent directly from Defendant concerning any of the Plaintiffs. Likewise, Plaintiffs have not presented an affidavit from any individual in Tennessee who took any action, such as reducing or ending support or contributions to Plaintiffs' ministries, based upon the receipt of an e-mail or other communication from Defendant. Plaintiffs have not even produced a copy of an allegedly defamatory e-mail sent from Defendant to an individual recipient or recipients which clearly shows the recipient was in Tennessee or that the e-mail was directed to Tennessee.

As noted, the complaint filed by the Plaintiffs is verified by Hanby and, as such, it has the same force and effect as an affidavit. *Daniel v. Cox,* No. 96-5283, 1997 WL 234615, * 2 (6th Cir. May 6 1997). In the complaint, Plaintiffs state Defendant "published...defamatory...communications both by email communications to individual persons such as ministry employees located within Tennessee as well as to supporters of Plaintiffs both within and without the State of Tennessee." [*Id.* at 6]. The complaint also alleges Defendant made communications "globally to the entirety of users of the Internet through her use of internet web blogs and group emails." [*Id.* at 6].[2]

In addition, the portions of Allison's affidavit stating that certain "ministry supporters" reside in Tennessee and terminated their relationship with, and financial support of, Plaintiffs does not appear to constitute hearsay, even if the conclusion drawn by Allison, that the termination of financial support was a result of Defendant's conduct, is inadmissible. Defendant admits she sent a reply e-mail to a

---

[2] Allison also states Defendant was an employee until 2004 when she moved to North Carolina [*id*. at 1-2, ¶ 7]. However, Plaintiffs also allege Defendant began sending her alleged defamatory communications commencing on February 17, 2006 [Doc. No. 1-2 at 6, ¶ 12]. Plaintiffs have not contended Defendant was a resident of the State of Tennessee as of February 17, 2006 or anytime thereafter.

16

group of "parishioners" of Hanby, although she denies knowing they were located in Tennessee. [Doc. No. 4 at 2, ¶9]. Allison's affidavit states Defendant was a former of employee of MHMI for many years [Doc. No. 13 at 1, ¶ 7] and that in such position she had access to materials including the names and addresses of ministry supporters [*id.* at 2, ¶ 9]. Given Defendant's prior employment with Plaintiffs, and viewing all of the facts in the light most favorable to Plaintiffs, a question of fact exists whether Defendant knew some of the "parishioners" receiving her group e-mail were located in Tennessee and would open her e-mail in Tennessee.

Considering the pleadings and affidavits in the light most favorable to the Plaintiffs, I find Plaintiffs have established a *prima facie* case for *in personam* jurisdiction over Defendant under the Tennessee long-arm statute. Given all reasonable inferences to Plaintiffs, they have made a *prima facie* case Defendant sent allegedly defamatory e-mails to at least Mr. Redden intending to have a result in Tennessee as the communications with Mr. Redden were directed to him in Tennessee. As a result, I find Defendant purposefully availed herself of causing a consequence in Tennessee. Plaintiffs have claimed the communications, which by inference include the communications with Mr. Redden, were tortious and allegedly are the heart of this action.

Construing the facts in favor of Plaintiffs, as I must, I find Plaintiffs have established with reasonable particularity sufficient contacts between Defendant and the State of Tennessee to support the exercise of jurisdiction consistent with the Due Process Clause. Nevertheless, given the reliance by the Court on inferences in reaching this conclusion, I also find Defendant is entitled to an evidentiary hearing on the issue of jurisdiction if she chooses to request such a hearing.

### IV.   Conclusion

For the reasons stated above, Defendant's motion to dismiss the Plaintiffs' complaint for lack of personal jurisdiction under Rule 12(b)(2) [Doc. No. 2] is **DENIED**. Defendant is **DIRECTED** to

file an appropriate motion for reconsideration if she seeks an evidentiary hearing so that the Court may determine disputed facts and issues of credibility instead of viewing the evidence in the light most favorable to Plaintiffs. Of course, Defendant remains free to further contest the issue of personal jurisdiction at trial if discovery reveals a material variance in the facts as alleged by the Plaintiffs on the issue of jurisdiction.

SO ORDERED.

ENTER:

*s/Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE